No. 18-60497

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

MICHAEL JAMES BARNES
Defendant-Appellant

Appeal from the United States District Court
For the Southern District of Mississippi
Criminal Cause No. 3:13CR38-DCB-LRA
Civil Cause No. 3:15cv682-DCB

---

## BRIEF FOR APPELLANT

---

**Michael L. Scott** (MB # 101320)
Assistant Federal Public Defender
Office of the Federal Public Defender
Southern District of Mississippi
200 S. Lamar Street, Suite 200-N
Jackson, MS  39201
Telephone:  601-948-4284
Facsimile:   601-948-5510

Attorney for Defendant-Appellant

# CERTIFICATE OF INTERESTED PARTIES

The undersigned certifies that the following persons have an interest in the outcome of this case:

1.    Michael James Barnes, Defendant-Appellant;

2.    David Michael Hurst, Jr., United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

3.    Gregory Layne Kennedy, Assistant United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

4.    Carla J. Clark, Assistant United States Attorney, Southern District of Mississippi, Jackson, Mississippi;

5.    Michael L. Scott, Assistant Federal Public Defender, Southern District of Mississippi, Jackson, Mississippi; and

6.    Honorable David Bramlette III, Senior United States District Judge, Jackson, Mississippi.

This certificate is made so that the judges of this Court may evaluate possible disqualification or recusal.

/s/ *Michael L. Scott*
**Michael L. Scott**
Attorney for Defendant-Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this case on the issue of whether Mr. Barnes waived his right to seek post-conviction relief under the Plea Agreement that he executed years ago. While the Plea Agreement contained a waiver of post-conviction relief provision, the legal right that Mr. Barnes relies on in this case did not arise until years after he executed the Agreement. Mr. Barnes contends that he could not have waived a right that did not exist at the time that he signed the Plea Agreement. Law in this circuit is inconsistent on this issue. Thus, the undersigned believes that oral argument will aid in resolving this case.

The defense believes that the waiver of post-conviction relief issue carries enough weight to warrant initial *en banc* review. Therefore, under the provisions of Rule 35 of the Federal Rules of Appellate Procedure and Fifth Circuit Rule 35, the undersigned will file a separate Petition for Hearing *En Banc* with the Court.

Finally, the undersigned notes that he has already moved for initial *en banc* review in two other cases that pose the exact same issue as this case – whether a defendant waives legal rights that do not arise until after execution of a waiver provision contained in a plea agreement. The other cases are *United States v. Richard Ben*, Fifth Circuit Case No. 18-60378 and *United States v. Wendell Taylor*, Fifth Circuit Case No. 18-60425. The undersigned filed the Petition for *En Banc* Hearing in *Ben* on February 27, 2019, and filed the Petition for *En Banc*

ii

Hearing in *Taylor* on March 12, 2019.  The Court has not rendered rulings in either case yet.

# TABLE OF CONTENTS

<u>page</u>:

CERTIFICATE OF INTERESTED PARTIES ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS.......................................................................................iv

TABLE OF AUTHORITIES ................................................................................ vii

I.  JURISDICTIONAL STATEMENT ..................................................................1

II.  STATEMENT OF ISSUES PRESENTED FOR REVIEW .................................2

III.  STATEMENT OF THE CASE........................................................................3

A.  Relief sought on appeal..................................................................................3

B.  Procedural history and relevant facts ............................................................4

IV.  SUMMARY OF ARGUMENTS.......................................................................9

V.  ARGUMENTS ...............................................................................................10

A.  Section 2255 standard ..................................................................................10

B.  The district court erred by finding that the post-conviction waiver in

Mr. Barnes' Plea Agreement bars him from the relief sought in the instant

§ 2255 Petition ...............................................................................................11

1.  Standard of review ........................................................................................11

2.  Introduction...................................................................................................11

3.  Argument ......................................................................................................12

C. Under the law set forth in Johnson (2015), Mr. Barnes should be

resentenced without applying the armed career criminal provisions

of the Armed Career Criminal Act............................................................32

1. Standard of review ...............................................................................32

2. The holdings in *Johnson* (2015) .........................................................32

3. Mr. Barnes does not have three qualifying prior convictions............................36

a. Introduction ........................................................................................36

b. The prior convictions at issue on appeal............................................36

c. The Supreme Court's binding definition of "physical force" in the

ACCA context......................................................................................39

d. The prior convictions specifically stated by the prosecution in the

Indictment are not violent felonies under the ACCA .............................................40

i) Kidnapping under Florida law is not a violent felony.........................................40

ii) Burglary under Florida law is not a violent felony ...........................................42

iii) Attempted robbery under Florida law is not a violent felony...........................44

e. The two additional prior convictions that are *not* specifically enumerated

in the Indictment are not violent felonies under the ACCA. ...................................49

i) Introduction ........................................................................................49

ii) Armed robbery under Florida law is not a violent felony..................................49

iii) Aggravated battery under Florida law is not a violent felony ..........................50

iv) Conclusion regarding the two additional prior convictions that are not specifically enumerated in the Indictment ................................................................53

VI.  CONCLUSION....................................................................................54

CERTIFICATE OF SERVICE ................................................................55

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................56

# TABLE OF AUTHORITIES

page(s):

cases:

*Ballew v. Georgia*,
  435 U.S. 223 (1978) .......................................................................................12, 13

*Beckles v. United States*,
  137 S.Ct. 886 (2017) ........................................................................................23

*Benitez-Saldana v. State*,
  67 So.3d 320 (Fla. Dist. Ct. App. 2011) ..............................................47

*Blakely v. Washington*,
  542 U.S. 296 (2004) ...............................................................................16, 17, 18

*Corner v. State*,
  868 So.2d 553 (Fla. Dist. Ct. App. 2004) ...........................................41

*Griffin v. Illinois*,
  351 U.S. 12 ......................................................................................................31

*James v. United States*,
  550 U.S. 192 L.Ed.2d 60 (2007 ..................................................................35, 43

*Jasmin v. United States*,
  No. 3:16cv761-J-32JBT, 2016 WL 6071663 (M.D. Fla. Oct. 17, 2017) .............41

*Johnson v. United States*,
  559 U.S. 133 (2010).................................................... 10, 39, 40, 41, 45, 46, 50, 51

*Johnson v. United States*,
  135 S.Ct. 2551 (2015) ...................................................................................*passim*

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ...........................................................................................13

*Mathis v. United States*,
   136 S.Ct. 2243 (2016) ................................................................14, 15, 19

*Mims v. State*,
   342 So.2d 116 (Fla. Dist. Ct. App. 1977) ...........................................47

*Robinson v. State,*
   462 So.2d 471 (Fla. Dist. Ct. App. 1984) ...........................................41

*Robinson v. State*,
   692 So.2d 883 (Fla. 1997)...................................................................47

*Smith v. Blackburn,*
   632 F.2d 1194 (5th Cir. 1980) ........................................3, 12, 13, 19, 32

*State v. Hamilton*,
   660 So.2d 1038 (Fla.1995)...................................................................43

*Stokeling v. United States*,
   139 S.Ct. 554 (2019) ...............................................................39, 40, 51

*Sykes v. United States*,
   131 S.Ct. 2267 (2011)..........................................................................35

*Taylor v. United States*,
   495 U.S. 575 (1990)........................................................................42, 43

*United States v. Andis*,
   333 F.3d 886 (8th Cir. 2003) ...............................................................23

*United States v. Azure*,
   571 F.3d 769 (8th Cir.2009) ................................................................26

*United States v. Batchelder*,
   442 U.S. 114 (1979).......................................................................37, 49

*United States v. Booker*,
   375 F.3d 508 (7th Cir. 2004) ...............................................................18

*United States v. Booker*,
543 U.S. 220 (2005) ......................................................................16, 17

*United States v. Burns*,
433 F.3d 442 (5th Cir. 2005) ...........................................3, 16, 17, 18, 19

*United States v. Eason*,
829 F.3d 633 (8th Cir. 2016) .................................................................48

*United States v. Elashyi*,
554 F.3d 480 (5th Cir.2008) ..................................................................26

*United States v. Escobedo*,
757 F.3d 229 ................................................................................11, 26, 32

*United States v. Fairley*,
735 Fed. App'x 153 (5th Cir. 2018) ......................................................28

*United States v. Farias*,
469 F.3d 393 (5th Cir.2006) ..................................................................26

*United States v. Fritts*,
841 F.3d (11th Cir. 2016) .......................................................................47

*United States v. Geozos*,
870 F.3d 890 (9th Cir. 2017) ...........................................................46, 47

*United States v. Gonzalez-Perez*,
472 F.3d 1158 (9th Cir. 2007) ...............................................................41

*United States v. Hernandez–Hernandez*,
431 F.3d 1212 (9th Cir. 2005) ...............................................................41

*United States v. Herrera-Ochoa*,
245 F.3d 495 (5th Cir. 2001) .................................................................20

*United States v. Kelly*,
915 F.3d 344 (5th Cir. 2019) ...........................................................19, 20

*United States v. Kirk*,
    F.3d 1136 (11th Cir. 2014) ....................................................44

*United States v. Lockley*,
    632 F.3d 1238 (11th Cir. 2011) ............................................47

*United States v. McBride*,
    826 F.3d 293 (6th Cir. 2016) ................................24, 25, 32

*United States v. Melancon*,
    972 F.2d 566 (5th Cir. 1992) ..................28, 29, 30, 31, 32

*United States v. Olano*,
    507 U.S. 725 (1993)...............................................24, 25

*United States v. Parnell*,
    818 F.3d 974 (9th Cir. 2016) ...............................................48

*United States v. Powell*,
    574 Fed. App'x 390 (5th Cir. 2014) ...............................27, 28

*United States v. Reyes-Contreras*,
    910 F.3d 169 (5th Cir. 2018) ...............................................50, 51

*United States v. Sierra*,
    No. 91-4342 (5th Cir. Dec. 6, 1991) ...............................29, 31

*United States v. Starks*,
    861 F.3d 306 (1st Cir. 2017)...............................................48

*United States v. Tarver*,
    712 F. App'x 885 (11th Cir. 2017)...............................52, 53

*United States v. Torres*,
    828 F.3d 1113 (9th Cir. 2016) ...............................21, 22, 23, 32

*United States v. Vigil*,
    774 F.3d 331 (5th Cir. 2014) ...............................................42, 43

*United States v. Villegas-Hernandez*,
468 F.3d 874 (5th Cir. 2006) ...........................................................50, 51, 52, 53

*United States v. Wainuskis*,
138 F.3d 183, (5th Cir. 1998) ............................................................................32

*United States v. Walker*,
302 F.3d 322 (5th Cir. 2002) .............................................................................19

*United States v. Wheeler*,
434 Fed. App'x 831 (11th Cir. 2011) .............................................................43, 44

*United States v. Winston*,
850 F.3d 677 (4th Cir. 2017) .............................................................................48

*United States v. Welch*,
36 S.Ct. 1257 (2016) .........................................................................................10

*United States v. Wright*,
681 Fed. App'x 418 (5th Cir. 2017) ......................................................3, 13, 14, 15

statutes:

Armed Career Criminal Act.................................................................*passim*

Federal Sentencing Act ..............................................................................16

18 U.S.C. § 16.......................................................................................51, 52

18 U.S.C. § 922.........................................................................1, 4, 33, 34, 38

18 U.S.C. § 924......................................................................................*passim*

18 U.S.C. § 2113...........................................................................................24

18 U.S.C. § 3742............................................................................4, 17, 22

28 U.S.C. § 1291.......................................................................................1, 17

28 U.S.C. § 2255....................................................................................*passim*

Fla. Stat. § 784.045 ...................................................................................50

Fla. Stat. § 787.01 ..............................................................................40, 41

Fla. Stat. § 787.02 ....................................................................................41

Fla. Stat. § 810.02 ......................................................................42, 43, 44

Fla. Stat. § 810.011 ..................................................................................43

Fla. Stat. 812.13 ...........................................................................45, 46, 49

Minn. Stat. § 609.67 (2006) ....................................................................34

Tex. Penal Code § 1.07 ............................................................................52

Tex. Penal Code § 22.01 ...................................................................51, 52

United States Constitution:

Fifth Amendment, Due Process Clause ....................................................31

Sixth Amendment, United States Constitution .........................................12

Fourteenth Amendment, Equal Protection Clause....................................31

rules:

Rule 4, Fed. R. App. P. ...............................................................................1

Rule 32, Fed. R. App. P. ...........................................................................56

Rule 35, Fed. R. App. P. ............................................................................ ii

Fifth Circuit R. 35 ...................................................................................... ii

United States Sentencing Guidelines:

Guidelines Sentencing Table ......................................................................6

U.S.S.G. § 2K2.1.........................................................................................21

U.S.S.G. 2L1.2............................................................................................51

U.S.S.G. § 4B1.1.........................................................................................24

U.S.S.G. § 4B1.2.........................................................................................14

U.S.S.G. § 4B1.4...........................................................................................5

law review:

Kathleen M. Sullivan, *Unconstitutional Conditions*,
   102 Harv.L.R. 1415, 1421-1422 (1989) ...............................................31

# I. JURISDICTIONAL STATEMENT

This appeal arises from a final order of the district court that denied Mr. Barnes' Petition for Post-Conviction Relief under 28 U.S.C. § 2255 (hereinafter "§ 2255 Petition" or "Petition"). Order, ROA.218-60. The § 2255 Petition is based on an underlying conviction and sentence for felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Judgment, ROA.31-36.

The district court entered the Order denying the § 2255 Petition on July 6, 2018. Order, ROA.260. Mr. Barnes filed a timely Notice of Appeal on July 9, 2018, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. Notice of Appeal, ROA.262-63. Jurisdiction is vested in this Court under 28 U.S.C. § 1291.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1)     Whether the district court erred by finding that the post-conviction waiver in Mr. Barnes' Plea Agreement bars him from the relief sought in the instant § 2255 Petition.

2)     Whether, under the law set forth in *Johnson*, Mr. Barnes should be resentenced without applying the armed career criminal provisions of the Armed Career Criminal Act.

# III.  STATEMENT OF THE CASE

## A.    Relief sought on appeal.

On March 1, 2019, this Court granted Mr. Barnes a Certificate of Appealability (hereinafter "COA") on the following two issues:

1)    "whether Barnes's *Johnson* claims are barred by the collateral-review waiver" in the subject Plea Agreement; and

2)    "whether the district court erred by dismissing the § 2255 motion as time-barred based on its determination that *Johnson* did not affect his sentence under the ACCA."  Fifth Circuit COA Order, p. 2.

Mr. Barnes asks this Court to rule that the post-conviction relief waiver is unenforceable in this case because a defendant cannot waive a right that is unknown at the time that he executes a waiver.[1]  If this Court agrees with Mr. Barnes' argument on the post-conviction waiver issue, then the Court must address the second issue stated above.

Regarding the second issue, Mr. Barnes asks the Court to find that under the retroactively applicable law set forth in *Johnson*, he no longer qualifies as an armed career criminal under the Armed Career Criminal Act (hereinafter "ACCA").  If the

---

[1] Mr. Barnes acknowledges that his argument on the waiver of post-conviction relief issue may be at odds with this Court's holdings in *United States v. Burns*, 433 F.3d 442 (5th Cir. 2005). But his argument is consistent with this Court's earlier holdings in *Smith v. Blackburn*, 632 F.2d 1194 (5th Cir. 1980) and the Court's later holdings in *United States v. Wright*, 681 Fed. App'x 418 (5th Cir. 2017).

Court agrees with this argument, then Mr. Barnes' sentence must be vacated and the case must be remanded to district court for resentencing.

**B.    Procedural history and relevant facts.**

A Federal Grand Jury for the Southern District of Mississippi indicted Mr. Barnes for felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Indictment, ROA.268. The Grand Jury returned the Indictment on April 16, 2013. *Id.* at ROA.268-69. The district court case number is 3:13cr38-DCB-LRA.

Mr. Barnes accepted responsibility for his actions by pleading guilty to the charge on July 9, 2013. *See* docket minute entry dated July 9, 2013, ROA.4. The plea was under a Plea Agreement containing a "Waivers" paragraph that stated in part:

> 16.    <u>Waivers</u>. Defendant … hereby expressly waives the following rights:
> a.    the right to appeal the conviction and sentence imposed in this case, or the manner in which the sentence was imposed, on the grounds set forth in Title 18, United States Code, Section 3742, or on any grounds whatsoever, and
> b.    the right to contest the conviction and sentence or the manner in which that sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255[.]

Plea Agreement, ROA.274.

The district court conducted a sentencing hearing on September 30, 2013. *See* docket minute entry dated Sept. 30, 2013, ROA.5. The Court deemed Mr.

Barnes an "armed career criminal" under the combined provisions of 18 U.S.C. §

924(e) of the ACCA and Guidelines § 4B1.4 because, as specifically charged in the

Indictment, he had prior convictions for:

- possession of precursors under Mississippi state law (Indictment, ROA.268);

- kidnapping under Florida state law (*id.* at ROA.268);

- burglary of a dwelling under Florida state law (*id.* at ROA.268); and

- attempted robbery under Florida state law (*id.* at ROA.268).

The Indictment listed no other prior convictions that the prosecution intended to

rely on to invoke the ACCA. *See Indictment*, ROA.268-69.

Mr. Barnes' status as an armed career criminal raised his adjusted offense

level from 18 to 34. *Compare* Presentence Investigation Report (hereinafter

"PSR"), ROA.289, ¶ 23, *with* ROA.289, ¶ 24. After deducting three points for

acceptance of responsibility, his total offense level was 31. PSR, ROA.289, ¶¶ 25-

27. Armed career offender status raised his criminal history category under the

Guidelines from V to VI. *Compare* PSR, ROA.294, ¶ 42, *with* ROA.294, ¶ 43.

Finally, armed career criminal status required a 15-year mandatory minimum

sentence. PSR, ROA.297, ¶ 64.

Combining the total offense level of 31 with the criminal history category of

VI resulted in a Guidelines sentencing range of 188 to 235 months in prison. PSR,

ROA.297, ¶ 65. The court ordered a 180 month prison sentence. Judgment,

ROA.38. As stated above, this was the statutory minimum sentence that the court

could order under the ACCA. PSR, ROA.297, ¶ 64. The district court entered an

Amended Judgment reflecting the 180-month prison sentence on October 24, 2013.

Amended Judgment, ROA.37-42.

     Without the "armed career criminal" enhancement, Mr. Barnes' offense

level would have been 15 (pre-Chapter 4 enhancement offense level of 18 less 3

points for acceptance of responsibility). *See* PSR, ROA.289, ¶¶ 23, 25, 26. His

criminal history category would have been V. *Id.* at ROA.294, ¶ 42. At a total

offense level of 15 and a criminal history category of V, his Guidelines sentence

range would have been 37 to 46 months in prison. *See* Guidelines Sentencing

Table. No statutory minimum sentence would be required.

     After the Final Judgment in Mr. Barnes' case was filed, the United States

Supreme Court established new sentencing law in *Johnson v. United States*, 135

S.Ct. 2551 (2015). *Johnson* was filed on June 26, 2015. *Johnson* rendered the

"residual clause" of the ACCA unconstitutionally vague.

     Based on the newly established law set forth in *Johnson*, Mr. Barnes filed a

*pro se* Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence

by a Person in Federal Custody on September 21, 2015. Petition, ROA.51-81. The

district court assigned the Petition civil case number 3:15cv682-DCB. On

December 28, 2015, the chief judge for the United States District Court for the

6

Southern District of Mississippi entered a Standing Order that appointed the Office of the Federal Public Defender to represent clients on the *Johnson* issue. Standing Order, ROA.95. On January 7, 2016, the undersigned entered an appearance in the case. Entry of Appearance, ROA.93-95.

The prosecution filed a Motion to Dismiss the Petition to Vacate on March 13, 2017. Motion to Dismiss, ROA.98-109. The undersigned responded to the Motion to Dismiss on March 27, 2017. Response to Motion to Dismiss, ROA.110-26. Then on April 10, 2018, the district court ordered the parties to provide further briefing on the issues presented in the § 2255 Petition and the Motion to Dismiss the Petition to Vacate. Order, ROA.127-54. In response to the district court's Order, the parties filed the following pleadings: (1) the prosecution filed an Amended Motion to Dismiss the Petition to Vacate (ROA.155-97); the defense filed a Response to the prosecution's Amended Motion to Dismiss (ROA.198-211); and the prosecution filed a Reply supporting its Amended Motion to Dismiss (ROA.212-17).

The district court denied the § 2255 Petition on July 6, 2018. Order, ROA.218-60. It denied a Certificate of Appealability on the same day. Order denying COA, ROA.261.

The district court based denying the relief sought in the § 2255 Petition on two grounds. First, the court found that that the waiver of post-conviction relief

provision in Mr. Barnes' Plea Agreement barred relief.  Order, ROA.259 (stating that "Barnes previously waived his right to collaterally attack his sentence in a § 2255 motion").  Second, the district court ruled that Mr. Barnes' arguments fail on the merits.  *Id.* at ROA.259 (stating that Barnes "failed to demonstrate that he was entitled to proceed under the auspices and parameters of *Samuel Johnson*").

Aggrieved by the district court's denial of the relief requested in Mr. Barnes' Petition, he filed a Notice of Appeal on July 9, 2018.  Notice of Appeal, ROA.262-63.  Since the district court denied a COA, Mr. Barnes had to move this Court for the same.  This Court granted a COA on March 1, 2019, stating "a COA is GRANTED as to the following issues: whether Barnes' *Johnson* claims are barred by the collateral-review waiver and whether the district court erred by dismissing the § 2255 motion as time-barred based on its determination that *Johnson* did not affect his sentence under the ACCA."  Fifth Circuit COA Order, p. 2.  This Appellant's Brief is filed in accordance with the Court's COA Order.

8

## IV.  SUMMARY OF ARGUMENTS

Mr. Barnes' first argument is that he did not waive his right to pursue post-conviction relief in this case.  He acknowledges that he signed a Plea Agreement containing a waiver of post-conviction relief provision.  However, the Supreme Court's decision in *Johnson*, the primary case relied on in Mr. Barnes' argument, was handed down about two years after he signed the Plea Agreement.  This means that he could not have known about the rights conferred by *Johnson* until years after he agreed to the waiver provision.

Under the law set forth below, defendants like Mr. Barnes cannot knowingly waive rights that are unknown at the time a waiver is executed.  For this reason, the waiver should not be enforced in this case.  Additionally, enforcement of the waiver would result in a miscarriage of justice.

The second argument is that Mr. Barnes should be resentenced without applying the ACCA's sentence enhancing provisions.  To be eligible for the enhancements, a defendant must have a combined total of three prior convictions for either "serious drug offenses" or "violent felonies."  Mr. Barnes has one prior conviction that qualifies as a "serious drug offense."  However, under the law in *Johnson*, none of his other priors qualifies as a "violent felony."  Since he no longer has three prior ACCA qualifying convictions, this Court should remand the case to district court for resentencing.

# V.  ARGUMENTS.

## A.     Section 2255 standard.

Mr. Barnes' Petition is filed under the provisions of 28 U.S.C. § 2255.

Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the *sentence*
> *was imposed in violation of the Constitution* or laws of the United States, or
> that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which imposed the sentence
> to vacate, set aside or correct the sentence.

(Emphasis added).

Mr. Barnes' conviction "was imposed in violation of the Constitution."  His

argument is based on the rulings in *Johnson v. United States*, 135 S.Ct. 2551

(2015),[2] which was decided by the Supreme Court on June 26, 2015.  In *United*

*States v. Welch*, 136 S.Ct. 1257 (2016), the Supreme Court held that the holdings

in *Johnson* (2015) are retroactively applicable to cases on collateral review.

---

[2] This Brief cites two important Supreme Court cases captioned "*Johnson v. United States*."  One
was filed in 2015 and published at 135 S.Ct. 2551.  That case renders the residual clause of §
924(e)(2)(B)(ii) unconstitutional.  The other was filed in 2010 and published at 559 U.S. 133.
That case defines the phrase "physical force" in § 924(e)(2)(B)(i).  In the remainder of this Brief,
*Johnson v. United States*, 135 S.Ct. 2551 (2015) is referred to as "*Johnson* (2015)," and *Johnson*
*v. United States*, 559 U.S. 133 (2010) is referred to as "*Johnson* (2010)."

**B.      The district court erred by finding that the post-conviction waiver in Mr. Barnes' Plea Agreement bars him from the relief sought in the instant § 2255 Petition.**

   **1.      Standard of review.**

"Issues concerning the interpretation and enforcement of a plea agreement are reviewed *de novo.*" *United States v. Escobedo*, 757 F.3d 229, 232 n.4 (5th Cir. 2014) (citations omitted).

   **2.      Introduction.**

The substantive argument in Mr. Barnes' § 2255 Petition relies on Supreme Court precedent in *Johnson* (2015). A detailed description of the holdings in Johnson (2015) are presented below under the second argument. For purposes of this waiver argument, we note that the *Johnson* (2015) Court ruled that the residual clause portion of the "violent felony" definition in the ACCA is unconstitutionally vague. *Johnson*, 135 S.Ct. at 2563. *Johnson* (2015) was decided in 2015, several years after Mr. Barnes executed the Plea Agreement containing the waiver of post-conviction relief provision.

The district court in Mr. Barnes' case found that he waived the right to seek post-conviction relief. In his § 2255 Petition in district court and on appeal before this Court, Mr. Barnes contends that the waiver of post-conviction relief provision in his Plea Agreement is unenforceable because a defendant cannot waive a right

11

that is unknown at the time that the waiver provision is executed. In other words, he could not have knowingly waived the right to argue the new law established in *Johnson* (2015) because that case was not decided until well after he executed the waiver of post-conviction relief provision. The following law supports Mr. Barnes' argument on the waiver issue.

### 3.    Argument.

This Court's holding in *Smith v. Blackburn*, 632 F.2d 1194 (5th Cir. 1980) supports Mr. Barnes' argument that the waiver of post-conviction relief provision is legally unenforceable under the facts of this case. A Louisiana state court convicted Blackburn of receiving stolen property. *Blackburn*, 632 F.2d at 1195. He was tried and convicted by a five-person jury. *Id.* It is important to note that to be tried by a five-person jury, Blackburn had to waive his right to a six-person jury. *Id.* The court sentenced him to 20 years in prison as a habitual offender. *Id.* The conviction was returned on May 5, 1975. *Id.*

Three years later in 1978, the Supreme Court decided *Ballew v. Georgia*, 435 U.S. 223 (1978). The *Ballew* Court held that a conviction returned by a five-person jury is unconstitutional under the Sixth Amendment. *Blackburn*, 632 F.2d at 1195 (citing *Ballew*). Blackburn filed a petition for habeas corpus relief in federal court, in which he invoked the holdings in *Ballew*. *Blackburn*, 632 F.2d at 1195. In response to Blackburn's petition, the government argued, "federal habeas

12

corpus relief is barred because petitioner elected to be tried by a five-member jury rather than a six-member jury after being informed of his right to so choose." *Id.*

This Court disagreed with the government's waiver argument. The Court held "[w]e find no waiver in this case." *Blackburn*, 632 F.2d at 1195. "A waiver is 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). This Court went on to hold, '[d]espite the respondent's insistence that petitioner should have been able to anticipate the Supreme Court's holding in *Ballew* three years down the road, petitioner clearly did not waive a 'known right or privilege.'" *Blackburn*, 632 F.2d at 1195.

Just as in *Blackburn*, Mr. Barnes could not anticipate that *Johnson* could affect his sentence because *Johnson* (2015) was decided by the Supreme Court about two years after he executed the Plea Agreement on July 2, 2013. *See* Plea Agreement, ROA.276. Consistent with the holdings of this Court in *Blackburn*, Mr. Barnes could not have waived a right that did not exist when the waiver was executed.

Another Fifth Circuit case supporting Mr. Barnes' argument is *United States v. Wright*, 681 Fed. App'x 418 (5th Cir. 2017). Wright pled guilty to felon in possession of a firearm. *Wright*, 681 Fed. App'x at 419. The plea was "[u]nder a plea agreement in which he waived his right to appeal[.]" *Id.* At sentencing, the

district court increased the offense level under the Sentencing Guidelines because "Wright's Texas conviction for 'delivery' of a controlled substance was a 'controlled substance offense' within the meaning of U.S.S.G. § 4B1.2." *Id.*

After this Court confirmed Wright's conviction and sentence but before he filed a petition for writ of certiorari with the Supreme Court, the Supreme Court handed down its decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016). *Wright*, 681 Fed. App'x at 419. The *Mathis* Court held that when "determining whether an offense qualifies as an Armed Career Criminal Act predicate, a sentencing court may subdivide a defendant's prior statute of conviction, and thus apply the modified categorical approach, only if that statute contains multiple 'elements' constituting separate crimes—not simply multiple 'means' of committing the same offense." *Id.* at 419 (citing *Mathis*, 136 S.Ct. at 2251-56).

In his appeal before the Supreme Court, Wright invoked *Mathis* by arguing that the district court erred by "applying the modified categorical approach in classifying his prior drug offense as a 'controlled substance offense' because the statute under which he was convicted does not set forth alternative elements for committing the statutory offense of conviction and thus is not divisible into separate offenses." *Wright*, 681 Fed. App'x at 419. The Supreme Court sided with Wright, and remanded the case to this Court for further consideration of the issue in light of *Mathis*. *Id.* at 420.

14

On remand, the first issue considered by this Court was "whether the appellate-rights waiver in Wright's plea agreement is enforceable as to his *Mathis*-based claim." *Wright*, 681 Fed. App'x at 420. Wright argued that the waiver was unenforceable because "a defendant can only waive 'known' rights and he could not have intentionally relinquished a claim based on *Mathis*" because *Mathis* was "decided after he was sentenced." *Id.*

Agreeing with Wright, this Court held: "Wright has not waived his *Mathis*-based argument" because "[w]aiver occurs when a party intentionally abandons a right that is known."[3] *Wright*, 681 Fed. App'x at 420 (citations omitted). "Where, as here, a right is established by precedent that does not exist at the time of purported waiver, a party cannot intentionally relinquish that right because it is unknown at that time." *Id.* (citations omitted).

Just as in *Wright*, Mr. Barnes' waiver of post-conviction relief should not be enforced because he could not waive an unknown right. That is, his rights under *Johnson* (2015) could not be waived because that decision was not handed down until about two years after Mr. Barnes executed the Plea Agreement containing the waiver of post-conviction relief provision.

---

[3] As a separate basis for finding that the appeal waiver should not be enforced, the Court noted that "the Government has waived the right to assert waiver by failing to object to Wright's appeal based on the waiver clause in his plea agreement." *Wright*, 681 Fed. App'x at 420. This alternative holding, however, does nothing to diminish the effect of the independent ruling that a party cannot knowingly waive an unknown right.

The undersigned anticipates that the prosecution will counter Mr. Barnes'
argument by citing *United States v. Burns*, 433 F.3d 442 (5th Cir. 2005).  The
holdings in *Burns* are arguably contrary to Mr. Barnes' argument on the waiver
issue.  As set forth below, however, the facts in *Burns* are clearly distinguishable
from the facts in Mr. Barnes' case.

*Burns* involved the direct appeal of a sentence that was handed down when
abiding by the sentencing calculation under the United States Sentencing
Guidelines (hereinafter "Sentencing Guidelines" or "Guidelines") was mandatory.
*Burns*, 433 F.3d at 444.  About two months after Burns' sentencing hearing, the
Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005).  *Burns*, 433
F.3d at 444.  As this Court is aware, *Booker* ruled that the holdings in *Blakely*
apply to the Sentencing Guidelines.[4]  *Booker*, 543 U.S. at 226.  Because of that
ruling, the *Booker* Court excised the portion of the Federal Sentencing Act that
made applying the Guidelines mandatory.  *Id.* at 226-27.  In other words, following
the sentencing calculation under the Guidelines was mandatory pre-*Booker*.  *Id.*
Post-*Booker*, following the Guidelines sentencing calculation is advisory.  *Id.*

---

[4] The complete cite for *Blakely* is *Blakely v. Washington*, 542 U.S. 296 (2004).  In *Blakely*, the
Supreme Court found that Washington's state court sentencing scheme was unconstitutional
because it allowed a sentencing judge, rather than the jury, to make fact-findings that could
increase a sentence over the otherwise applicable recommended statutory maximum sentence.

Relying on *Booker and Blakely*, Burns argued on appeal that his sentence should be vacated and his case should be remanded to district court for resentencing under the advisory Sentencing Guidelines. *Burns*, 433 F.3d at 444 and 446. One of the primary issues on appeal was whether Burns waived his right to appellate review by executing a plea agreement containing a waiver of appeal provision. *See id.* at 445-51. The appeal waiver provision stated in part, "BURNS waives his rights, conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, to appeal from his conviction and sentence." *Id.* at 443.

Burns argued that the appeal waiver should not be enforced "because at and before his sentencing there was no right to be sentenced under advisory, non-mandatory guidelines as subsequently provided for in Justice Breyer's *Booker* remedial opinion." *Burns*, 433 F.3d at 446. The Court rejected Burns' argument and held that "an otherwise valid appeal waiver is not rendered invalid, or inapplicable to an appeal seeking to raise a *Booker* … issue (whether or not that issue would have substantive merit), merely because the waiver was made before *Booker*." *Id.* at 450-51.

While the quote from *Burns* in the previous paragraph may appear to be at odds with Mr. Barnes' arguments on appeal, there is a very important distinguishing fact in *Burns*. Burns' plea hearing was on July 21, 2004. *Burns*, 433 F.3d at 443. The Supreme Court had already decided *Blakely* before that

17

date.[5]  As the *Burns* Court noted, the holdings in *Blakely* were "more than arguably applicable to the Sentencing Guidelines" even before the Supreme Court's decision in *Booker*.  *Burns*, 433 F.3d at 450 n.9.  As also noted by the *Burns* Court, in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004) the Seventh Circuit had already held that *Blakely* applied to the Guidelines.  *Burns*, 433 F.3d at 450 n.9. The Seventh Circuit's decision in *Booker* was on July 9, 2004, which was before Burns' plea hearing.  Finally, the *Burns* Court recognized that "[e]ven though Burns demonstrated his knowledge of *Blakely* and its potential impact on the Guidelines, he waived his right to appeal his sentence," and he "did not attempt to withdraw his guilty plea and the accompanying appeal waiver (or to amend the terms of his appeal waiver) when the district court overruled his *Blakely* objection."  *Id.* at 450 n.9.

The point is that Burns was on notice that *Blakely* would probably apply to the Sentencing Guidelines, and he knowingly waived his right to appeal anyway. In contrast, Mr. Barnes had no notice whatsoever that the retroactively applicable holdings in *Johnson* (2015) would affect his sentence.  This is true because he was sentenced on September 30, 2013, and *Johnson* (2015) was not decided until June

---

[5] *Blakely* was decided on March 23, 2004, and the Supreme Court denied rehearing on August 23, 2004.  *Blakely*, 124 S.Ct. at 2531.

26, 2015. For this important reason, the Court should not follow the rulings in *Burns*.

Another reason to disregard *Burns* is that its holdings conflict with this Court's earlier rulings in *Blackburn*, which is described above. "[T]his circuit's rule [is] that one panel may not overrule a prior panel opinion and the earlier precedent controls." *United States v. Walker*, 302 F.3d 322, 325 (5th Cir. 2002). Both *Blackburn* and *Burns* were panel decisions. Under this Court's rule of controlling precedent set forth in *Walker*, the Court must follow the holdings in *Blackburn*, which was decided in 1980, rather than the conflicting holdings in *Burns*, which was decided in 2005.

A final Fifth Circuit case that must be mentioned is *United States v. Kelly*, 915 F.3d 344 (5th Cir. 2019). Kelly was convicted of felon in possession of a firearm and the court enhanced his sentence under the ACCA. *Id.* at 347. He executed a plea agreement containing a waiver of appeal provision. *Id.*

Kelly's first argument on appeal was that the district court erred by invoking the ACCA at sentencing. *Kelly*, 915 F.3d at 347. His second argument was ineffective assistance of counsel based on defense counsel's failure to invoke the holdings in *Johnson* (2015) and *Mathis* to combat the ACCA issue. *Id.* at 347 & 351. The initial issue addressed by this Court was whether the waiver of appeal

19

provision should be enforced. *Id.* at 347. The Court upheld the waiver provision because it was made knowingly and voluntarily. *Id.* at 350.

The holdings in *Kelly* provide no guidance in Mr. Barnes' case because, as this Court recognized, *Johnson* (2015) was decided before Kelly's plea hearing. *Kelly*, 915 F.3d at 351 n.13. In fact, as indicated by a review of the district court's docket in Kelly's case, the plea agreement itself was signed over nine months after the Supreme Court decided *Johnson* (2015).[6]

So the bottom line is this – *Kelly* does not involve the question of whether a defendant can knowingly waive a right that is not known when the waiver is executed. This is true because Kelly had notice of *Johnson* (2015) well before he executed the plea agreement. Since the question in Mr. Barnes' case is whether a defendant can knowingly waive an unknown right, and since *Kelly* does not address that issue, this Court should not rely on the holdings in *Kelly*.

---

[6] *Johnson* (2015), the primary case relied on by Kelly, was decided on *June 26, 2015*. *Johnson*, 135 S.Ct. at 2551. Kelly's district court case number is 3:16cr21-DMB-RP, in the Northern District of Mississippi. Kelly's plea agreement is filed under docket entry number 12 in that case. A review of the plea agreement indicates that he signed the document on *March 31, 2016*, over nine months after the Supreme Court decided *Johnson* (2015). Under *United States v. Herrera-Ochoa*, 245 F.3d 495 (5th Cir. 2001), this Court can take judicial notice of the plea agreement filed in Kelly's district court case. This is true because "[j]udicial notice may be taken of any fact 'not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* at 501 (citation omitted). Further, "[a]n appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court." *Id.* (citations omitted).

20

In addition to Fifth Circuit precedent, we look to persuasive case law from other circuit courts of appeal.    In *United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016), the Ninth Circuit analyzed the exact same issue that is before this Court. Pursuant to a plea of guilty, Torres was convicted of felon in possession of a firearm. *Id.* at 1116.  He entered a plea agreement in which he waived the right to appeal all issues other than denial of a motion to suppress evidence.  *Id.*  He appealed both his sentence and denial of the motion to suppress to the Ninth Circuit.  *Id.*

The *Torres* court upheld the district court's denial of the motion to suppress. *Torres*, 828 F.3d at 1116.  As to the sentencing issue, the court found that the waiver of appeal provision was unenforceable because a defendant cannot waive the right to appeal an illegal or unconstitutional sentence.  *Id.* at 1116, 1124. In regard to the sentencing issue on appeal, Torres challenged

> his sentence on the grounds that the district court incorrectly enhanced his offense level under section 2K2.1 of the U.S. Sentencing Guidelines, in light of the Supreme Court's June 2015 decision in *Johnson v. United States*, 135 S.Ct. at 2557–60.  *Johnson* held that the ACCA's catch-all "residual clause," *see* 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague because it failed to specify the crimes that fell within its scope sufficiently clearly to satisfy the dictates of due process.  *Johnson*, 135 S.Ct. at 2557–58, 2563. Torres argues that section 2K2.1(a)(2)'s identically worded residual clause is likewise unconstitutional.

*Torres*, 828 F.3d at 1123.

Before addressing the merits of the sentencing issue, the court had to decide whether the argument was barred by the waiver of appeal provision in the plea

agreement. *Torres*, 828 F.3d at 1124. The waiver of appeal provision stated that Torres

> knowingly and expressly waive[d]: (a) the right to appeal any sentence imposed within or below the applicable guidelines range as determined by the Court, with the exception of preserving the right to appeal a determination that the [he] qualifies as an Armed Career Criminal; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence.

*Id.* (internal footnotes omitted).

The government sought dismissal of the sentencing issue based on the waiver of appeal provision. The court held that standard contract principles applied to interpretation of an appeal waiver, and that it would "enforce an appeal waiver contained in a plea agreement if 'the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made.'" *Torres*, 828 F.3d at 1124. The court went on to hold:

> The analogy between plea agreements and private contracts is imperfect, however, because the Constitution imposes a floor below which a defendant's plea, conviction, and sentencing may not fall. For example, an appeal waiver does not deprive a defendant of a constitutional ineffective assistance of counsel claim. A waiver of appellate rights will also not apply if a defendant's sentence is "*illegal*," which includes a sentence that "*violates the Constitution*."

*Id.* (emphasis added; internal and end citations omitted).

22

The government in *Torres* conceded that *Johnson* (2015) applies to the Sentencing Guidelines.[7] *Torres*, 828 F.3d at 1125. The court held, "[w]e therefore accept the Government's concession that the district court sentenced Torres pursuant to a provision in the Guidelines that is unconstitutionally vague. This renders Torres's sentence "illegal," and therefore the waiver in his plea agreement does not bar this appeal." *Id.* (citation omitted).[8] The Ninth Circuit then remanded the case to district court for resentencing in light of the holdings in *Johnson* (2015). *Id.*

It is hard to imagine a case with more comparable legal issues than Mr. Barnes' case and *Torres*. Both involve waiver issues that relate to filing § 2255 petitions pursuant to the holdings in *Johnson* (2015). As in *Torres*, this Court should find that the waiver of post-conviction relief provision in Mr. Barnes' plea agreement is unenforceable because he cannot waive the right to challenge an illegal and/or unconstitutional sentence.

---

[7] Mr. Barnes recognizes that in *Beckles v. United States*, 137 S.Ct. 886 (2017), the Supreme Court ruled that *Johnson* (2015) is inapplicable to the Sentencing Guidelines. *Beckles* does not affect Mr. Barnes' case because he was sentenced under the armed career criminal provisions of the Armed Career Criminal Act. So the analysis in *Torres* in regard to enforcing the waiver provision continues to apply in Mr. Barnes' case because his sentence is "illegal" under *Johnson* (2015).

[8] The Eighth Circuit also holds that appeal rights cannot be waived in regard to attacking a sentence that is "constitutionally invalid[.]" *United States v. Andis*, 333 F.3d 886, 942 (8th Cir. 2003).

Another relevant case to the waiver issue is the Sixth Circuit's decision in

*United States v. McBride*, 826 F.3d 293 (6th Cir. 2016).  The facts and procedural

posture of *McBride* follow:

> William McBride signed a plea agreement after being charged in five
> jurisdictions with six counts of bank robbery in violation of 18 U.S.C. §
> 2113(a), (d).  The agreement included an "understand[ing]" that McBride
> would be sentenced as a career offender because "he ha[d] at least two prior
> crime of violence convictions."  *See* USSG § 4B1.1(a).  The presentence
> report recommended designating McBride a career offender based on two
> prior convictions for bank robbery, also in violation of § 2113.  McBride's
> sentencing memorandum asked the court to depart downward from the
> Sentencing Guidelines advisory range of 188 to 235 months of
> imprisonment, but agreed that "[t]here is no dispute that McBride is a 'career
> offender.'"  His counsel also conceded the career-offender point at
> sentencing.  Had he not been labeled a career offender, the Guidelines
> sentencing range would have been 100 to 125 months of imprisonment.  The
> district court sentenced McBride to 216 months of imprisonment.  McBride
> now contests his career-offender designation, arguing that in light of
> *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569
> (2015), § 2113 is not a predicate offense under the career-offender guideline.

*Id.* at 294.

The court held, "McBride waived this argument, except insofar as it could

not have been made before *Johnson* (2015).  A defendant waives the argument that

a sentencing enhancement does not apply by 'explicitly agreeing' that it does, such

as through 'plain, positive concurrence.'"  *McBride*, 826 F.3d at 294-95 (citations

omitted).  The court went on to hold:

> However, a defendant can abandon only "known right[s]."  *United States v.*
> *Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)

(emphasis added).[9] McBride could not have intentionally relinquished a claim based on *Johnson*, which was decided after his sentencing. Although McBride otherwise waived the right to appeal his career-offender status, to the extent that his claim relies on *Johnson*, we review for plain error.

*Id.* at 295 (bracketed footnote added; end citation and some internal citations omitted). Based on this holding, the court considered the merits of McBride's *Johnson* (2015)-related sentencing argument.

Under *McBride*, a defendant can waive only rights that are known to him at the time of the waiver. Rights unknown at the time of the waiver cannot be waived.

The holdings in *McBride* are directly comparable to the issue before this Court in Mr. Barnes' case. Mr. Barnes' Plea Agreement is dated June 12, 2013. Plea Agreement, ROA.271. He signed the Plea Agreement on July 2, 2013. *Id.* at ROA.276. *Johnson* (2015) was decided in 2015. Because *Johnson* (2015) was decided well after Mr. Barnes entered the Plea Agreement containing the waiver of post-conviction relief provision, the waiver in not enforceable as to any *Johnson* (2015)-related issue. This is true because an unknown right cannot be waived, and Mr. Barnes could not have known about the rights afforded by *Johnson* (2015) at the time he signed the Plea Agreement.

---

[9] *Olano* states that "waiver is the 'intentional relinquishment or abandonment of a known right.'" 507 U.S. at 733.

In the context of abandonment of an unknown right through a waiver, we must consider how the Fifth Circuit construes plea agreements.  In *United States v. Escobedo*, 757 F.3d 229, 233 (5th Cir. 2014),[10] this Court held:

> We construe a plea "agreement like a contract, seeking to determine the defendant's '*reasonable understanding*' of the agreement and construing ambiguity against the Government." *United States v. Farias*, 469 F.3d 393, 397 (5th Cir.2006); *accord United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir.2008) ("[A] plea agreement is construed strictly against the Government as the drafter."); *United States v. Azure*, 571 F.3d 769, 772 (8th Cir.2009) ("The government bears the burden of establishing that the plea agreement clearly and unambiguously waives the defendant's right[s][.]").

(Emphasis added).

An important aspect of this holding is that construction of a plea agreement must be based on the defendant's "reasonable understanding" of the agreement. The undeniable inference is that the "reasonable understanding" must be judged at the time the defendant executes the plea agreement.

Meshing the holdings in *McBride* and *Escobedo* together, this Court should find that Mr. Barnes did not waive his right to pursue the *Johnson* (2015)-related argument in his § 2255 Motion.  How could he have "reasonably understood" that he was waiving a right that he did not know existed?  The answer to this question

---

[10] In *Escobedo*, the Fifth Circuit found that the government's interpretation of the appeal waiver provision of the plea agreement did not comport with Escobedo's reasonable interpretation of the agreement.  757 F.3d at 234.

is simple – he could not have. This requires a finding that the waiver of post-conviction relief provision is unenforceable in this case.

Such a finding will be consistent with at least three other *Johnson* (2015)-related cases in the Southern District of Mississippi. In all three cases, the petitioner-defendant executed plea agreements containing waiver of post-conviction relief provisions. In all three cases the prosecution filed motions to dismiss based on the waiver provisions. Notwithstanding the motions to dismiss, the Court considered the *Johnson* (2015)-related petitions on the merits, rather than dismissing the cases pursuant to the waiver of post-conviction relief provisions. The cases are:

- *United States v. Nagascus Terrell Culpepper*, case no. 3:12cr118-CRW-FKB, the Motion to Dismiss is at docket entry number 420 and the district court's order is at docket entry number 423;
- *United States v. Christopher Lamont Tarrio*, case no. 3:08cr1-TSL-LRA, the Motion to Dismiss is at docket entry number 38 and the district court's order is at docket entry number 40; and
- *United States v. Curtis Craven*, case no. 2:08cr5-KS-MTP, the Motion to Dismiss is at docket entry number 38 and the district court's order is at docket entry number 40.

We also note that many circuit courts have adopted a "miscarriage of justice" exception to enforcement of appeal waiver provisions. *United States v. Powell*, 574 Fed. App'x 390, 394 (5th Cir. 2014). The Fifth Circuit has neither

accepted nor rejected the miscarriage of justice exception to enforcing appeal waivers or post-conviction relief provisions.[11] *Powell*, 574 Fed. App'x at 394.

Mr. Barnes' fact pattern gives this Court a prime opportunity to address miscarriage of justice in the context of appeal waivers and post-conviction relief waivers. Many defendants have received sentence reductions under the retroactively applicable holdings in *Johnson* (2015). To deny Mr. Barnes and other defendants that executed waivers of post-conviction relief would be patently unjust and unfair. Adopting a miscarriage of justice rule of law in this context will cure that unjust result.

Finally, we direct the Court's attention to Judge Parker's concurring opinion in *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992). *Melancon* involved whether provisions barring the appeal of sentences are unenforceable in general. *Id.* at 567. In Mr. Barnes' case, the defense is not arguing that waiver of the right to attack a sentence on direct appeal or via post-conviction relief is unenforceable in all circumstances. He specifically argues that they are unenforceable as to rights that are unknown at the time the waiver is executed. Nevertheless, Judge Parker's

---

[11] This Court decided *Powell* in 2014. The undersigned searched for Fifth Circuit cases decided after 2014 addressing the miscarriage of justice issue. No published decisions addressing the issue were uncovered. In one unpublished and nonbinding case, *United States v. Fairley*, 735 Fed. App'x 153 (5th Cir. 2018), a panel of this Court held "[w]e decline to adopt the miscarriage of justice exception to appellate waivers." *Id.* at 154. It is important to note, however, that *Fairley* did not involve whether a defendant can waive a right that is unknown at the time the waiver is executed. *See id.* at 1153-54.

concurring opinion provides a good explanation of constitutional concerns surrounding waiver of appeal rights and waiver of post-conviction relief rights.

On the prosecution's motion to dismiss the appeal, the *Melancon* Court held "that a defendant may, as part of a valid plea agreement, waive his statutory right to appeal his sentence." *Id.* at 568. Accordingly, this Court granted the prosecution's motion to dismiss Melancon's appeal. *Id.*

Judge Parker authored a lengthy and well-reasoned concurring opinion in *Melancon*. 972 F.2d at 570-80. He began by stating, "I concur specially because I cannot dissent. This panel is bound by the unpublished, *per curiam* opinion, *United States v. Sierra*, No. 91-4342 (5th Cir. Dec. 6, 1991) [951 F.2d 345 (Table)]." *Id.* at 570. He went on to state "I write separately to express why I think the rule embraced by this Circuit in *Sierra* is illogical and mischievous – and to urge the full Court to examine the '*Sierra* rule,' and to reject it." *Id.*

Judge Parker reasoned that "[t]he rule articulated in *Sierra* is clearly unacceptable, even unconstitutional policy: the '*Sierra* rule' manipulates the concept of knowing, intelligent and voluntary waiver so as to insulate from appellate review the decision-making by lower courts in an important area of the criminal law." *Melancon*, 972 F.2d at 571. "I do not think that a defendant can ever knowingly and intelligently waive, as part of a plea agreement, the right to

appeal a sentence that has yet to be imposed at the time he or she enters into the plea agreement; such a 'waiver' is inherently uninformed and unintelligent." *Id.*

Judge Parker acknowledged that waivers can be valid in a number of scenarios in criminal cases. However,

> [i]n the typical waiver cases, the act of waiving the right occurs at the moment the waiver is executed. For example: one waives the right to silence, and then speaks; one waives the right to have a jury determine one's guilt, and then admits his or her guilt to the judge. In these cases, the defendant knows what he or she is about to say, or knows the nature of the crime to which he or she pleads guilty.

*Melancon*, 972 F.2d at 571 (citations omitted). But "[t]he situation is completely different when one waives the right to appeal a Guidelines-circumscribed sentence before the sentence has been imposed. What is really being waived is not some abstract right to appeal, but the right to correct an erroneous application of the Guidelines or an otherwise illegal sentence." *Id.* at 572. "This right cannot come into existence until after the judge pronounces sentence; it is only then that the defendant knows what errors the district court has made – i.e., what errors exist to be appealed, or waived." *Id.* (citation omitted).

Judge Parker's attack on the majority's opinion addresses constitutional concerns. He opines that the rule adopted by the majority "reflects the imposition of an unconstitutional condition upon a defendant's decision to plead guilty." *Melancon*, 972 F.2d at 577.

> Unconstitutional conditions occur "when the government offers a benefit on condition that the recipient perform or forego an activity that a preferred constitutional right normally protects from governmental interference. The 'exchange' thus has two components: the conditioned government benefit on the one hand and the affected constitutional right on the other."

*Id.* (quoting Kathleen M. Sullivan, *Unconstitutional Conditions*, 102 Harv.L.R. 1415, 1421-1422 (1989) (emphasis in original)).  "With a '*Sierra* Waiver,' the government grants to the criminal defendant the *benefit* of a plea agreement only on the *condition* that the defendant accept the boot-strapped abdication of his or her right to appeal."  *Melancon*, 972 F.2d at 578 (emphasis in original).  "This is at least unacceptable, even if the government may withhold the benefit (i.e., the plea agreement) altogether."  *Id.* (citation omitted).

Judge Parker recognized that in order to create the constitutional issue described in the previous paragraph of this Brief, there must be a constitutional right.  "The right to appeal is a statutory right, not a constitutional right." *Melancon*, 972 F.2d at 577 (citation omitted).  However,

> [e]ven if the Due Process and Equal Protection Clauses of the Constitution do not require the government to create a statutory system of appellate rights, these constitutional clauses do require the government, once it has decided voluntarily to create such a system (as it has), to allow unfettered and equal access to it.

*Id.* (citing *Griffin v. Illinois*, 351 U.S. 12 (1956) (holding that government has a due process duty not to limit the opportunity of a statutorily created direct appeal in a criminal case)).  In other words, once the statutory right to appeal is

established, due process and equal protection bar the government from infringing on the right in an improper manner.

Judge Parker's concurring opinion in *Melancon* provides further justification for Mr. Barnes' argument. Based on the holdings presented and analyzed above in *Blackburn*, *Wright*, *Torres*, *McBride*, *Escobedo* and *Melancon*, this Court should find that Mr. Barnes did not knowingly waive his right to pursue post-conviction relief in this case.

**C.    Under the law set forth in *Johnson* (2015), Mr. Barnes should be resentenced without applying the armed career criminal provisions of the Armed Career Criminal Act.**

**1.    Standard of review.**

Regarding a district court's denial of relief under a § 2255 petition, this Court reviews factual findings under a clear error standard of review and conclusions of law under a *de novo* standard. *United States v. Wainuskis*, 138 F.3d 183, 185 (5th Cir. 1998).

**2.    The holdings in *Johnson* (2015).**

The initial paragraph of the *Johnson* (2015) opinion provides a good synopsis of the issue addressed by the Court. This paragraph states:

> Under the Armed Career Criminal Act of 1984, a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a "violent felony," a term defined to include any felony that "involves conduct that presents a serious potential

risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). We must decide *whether this part of the definition of a violent felony survives the Constitution's prohibition of vague criminal laws*.

*Johnson* (2015), 135 S.Ct. at 2555 (emphasis added).

The opinion focuses on a provision of the ACCA codified in 18 U.S.C. § 924.  The relevant provision of § 924 states:

(e)(1)  In the case of a person who violates section 922(g)[12] of this title and has three previous convictions by any court referred to in section 922(g)(1)[13] of this title for a *violent felony* or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and *imprisoned not less than fifteen years*, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (emphasis added; bracketed footnotes added).

*Johnson* (2015) pertains to the "violent felony" language in § 924(e).  This phrase is defined in 18 U.S.C. § 924(e)(2)(B) as follows:

(e)(2) As used in this subsection –
\* \* \* \* \*
(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

---

[12] 18 U.S.C. § 922(g) makes it a crime for a convicted felon to possess a firearm.
[13] 18 U.S.C. § 922(g)(1) limits the definition of a convicted felon to a felon "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[.]"

33

(Emphasis added).

The *Johnson* (2015) holdings particularly focus on the language of §
924(e)(2)(B)(ii), which states that the definition of "violent felony" includes any
act that "otherwise involves conduct that presents a serious potential risk of
physical injury to another."  This language is commonly referenced as the ACCA's
"residual clause."  *See Johnson* (2015), 135 S.Ct. at 2555-56.

Following is a summary of the relevant facts in *Johnson* (2015) and the
Court's framing of the issue in light of the case-specific facts:

> After his eventual arrest, Johnson pleaded guilty to being a felon in
> possession of a firearm in violation of § 922(g). The Government requested
> an enhanced sentence under the Armed Career Criminal Act. It argued that
> three of Johnson's previous offenses – including unlawful possession of a
> short-barreled shotgun, *see* Minn. Stat. § 609.67 (2006) – qualified as violent
> felonies. The District Court agreed and sentenced Johnson to a 15-year
> prison term under the Act. The Court of Appeals affirmed. We granted
> certiorari to decide whether Minnesota's offense of unlawful possession of a
> short-barreled shotgun ranks as a violent felony under the residual clause.
> We later asked the parties to present reargument addressing the
> compatibility of the residual clause with the Constitution's prohibition of
> vague criminal laws.

*Johnson* (2015), 135 S.Ct. 2556 (citations to procedural history omitted).

In relation to the residual clause of the ACCA, the *Johnson* (2015) Court
held:

> [I]mposing an increased sentence under the residual clause of the Armed
> Career Criminal Act violates the Constitution's guarantee of due process.

Our contrary holdings in *James*[14] and *Sykes*[15] are overruled. Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.

*Johnson* (2015), 135 S.Ct. at 2563 (bracketed footnotes added).

*Johnson* (2015) holds that it is unconstitutional to increase a defendant's sentence under § 924(e)(1) because he has any prior "violent felonies," as defined under the residual clause of § 924(e)(2)(B)(ii). The Court also stated that its ruling is not applicable to the enumerated "violent felonies" stated in § 924(e)(2)(B)(ii), which are burglary, arson, extortion or crimes involving the use of explosives.

To summarize, post-*Johnson* (2015) a prior conviction qualifies as a "violent felony" under the ACCA if the conviction falls into one of two categories enumerated under 18 U.S.C. § 924(e)(2)(B). The crime of conviction must:

(1)    have "as an element the use, attempted use, or threatened use of physical force against the person of another" (§ 924(e)(2)(B)(i)); or

(2)    be "burglary, arson, or extortion" or "involve[] use of explosives" (§ 924(e)(2)(B)(ii)).

Prior to *Johnson* (2015), if a crime of conviction fell under a third category, the residual clause of § 924(e)(2)(B)(ii), then the prior conviction was a violent felony. Under the residual clause, a prior conviction is deemed a violent felony if

---

[14] The full cite for *James* is *James v. United States*, 550 U.S. 192, 180 L.Ed.2d 60 (2007).
[15] The full cite for *Sykes* is *Sykes v. United States*, —— U.S. ——, 131 S.Ct. 2267 (2011).

it "otherwise involve[ed] conduct that present[ed] a serious potential risk of injury to another[.]" *Id.*

### 3.    Mr. Barnes does not have three qualifying prior convictions.

#### a.    Introduction.

Under 18 U.S.C. § 924(e)(1), the ACCA's sentencing provisions are triggered when a defendant has a combined total of three prior convictions for either "violent felonies" or "serious drug offenses."  Mr. Barnes does not contest that the prior conviction for possession of precursors is a "serious drug offense."  It is undisputed that he has no other qualifying prior drug offenses, so the issue is whether he has two or more prior "violent felony" convictions under the ACCA.

#### b.    The prior convictions at issue on appeal.

Mr. Barnes is not contesting his guilt in regard to the instant felon in possession conviction.  His sentence is the contested issue.  As discussed above, Mr. Barnes was subject to an increase in his offense level and a mandatory minimum sentence because of his purported status as an armed career criminal.

When the prosecution drafted the Indictment against Mr. Barnes, it chose to limit the prior felony convictions relied on to support its contention that Mr. Barnes is subject to sentencing under the ACCA.  The ACCA triggering prior convictions that the prosecution specifically stated in the Indictment are:

- possession of precursors under Mississippi state law (Indictment, ROA.268);

36

- kidnapping under Florida state law (*id.* at ROA.268);

- burglary of a dwelling under Florida state law (*id.* at ROA.268); and

- attempted robbery under Florida state law (*id.* at ROA.268).

Notwithstanding the plain language charged in the Indictment, during the litigation of the instant *Johnson* (2015)-related § 2255 Petition, the prosecution argued that the following additional prior convictions can be considered in the analysis:

- armed robbery under Florida state law (Amended Motion to Dismiss, ROA. 165-66; *see also*, PSR, ROA.290, ¶ 31); and

- aggravated battery under Florida state law (Amended Motion to Dismiss, ROA.166-67; *see also*, PSR, ROA.290, ¶ 31).

In district court, Mr. Barnes argued that the prior convictions stated in the Indictment are the only prior convictions that the court could consider in the ACCA analysis. He based this argument on Supreme Court precedent stated in *United States v. Batchelder*, 442 U.S. 114 (1979). The *Batchelder* Court held that "[w]hether to prosecute and what charge to file or bring before the grand jury are decisions that generally rest in the prosecution's discretion." *Id.* at 124. Under this holding, the prosecutor can choose to narrowly draw an indictment, as it did in Mr. Barnes' case, to limit the ACCA analysis to considering _only_ the four prior convictions specifically stated in the Indictment. Since the prosecutor knowingly

37

excluded the two additional priors noted above from the Indictment, it cannot

resurrect them for consideration in Mr. Barnes' ACCA analysis.

Even if this Court disagrees with Mr. Barnes' argument that we are limited

to the four prior convictions specifically stated in the Indictment, then other

limitations must be considered concerning the two additional priors argued by the

prosecution.  18 U.S.C. § 924(e)(1), which states in part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined under this title and imprisoned not less than fifteen years[.]

(Emphasis added).  Under the emphasized language, prior crimes must have

occurred "on occasions different from one another" to be counted as separate prior

convictions in the ACCA analysis.

The PSR indicates that the two additional priors that the prosecution seeks to

inject into the analysis – convictions for armed robbery and aggravated battery

under Florida law – were crimes committed at the same time as the Florida

conviction for kidnapping.  PSR, ROA.290, ¶ 31.  The kidnapping conviction is

stated in the Indictment as one of the prior convictions relied on by the prosecution

for ACCA purposes.  So even if the Court rejects Mr. Barnes' argument that the

Indictment limits the prior convictions that can be considered, only one of the three

38

can be counted as an ACCA prior conviction under § 924(e)(1).  The effect of §

924(e)(1) is further addressed below.

### c.    The Supreme Court's binding definition of "physical force" in the ACCA context.

Post-*Johnson* (2015), there are only two possibilities for a court to deem a

prior conviction a "violent felony" conviction under the ACCA.  First is the

physical force clause stated in 18 U.S.C. § 924(e)(2)(B)(i), and second is the

enumerated offense clause of § 924(e)(2)(B)(ii).  The legal definition of "physical

force" is a central issue in the analysis of any prior conviction under the physical

force clause stated in § 924(e)(2)(B)(i).

In *Johnson* (2010)[16] the Supreme Court defined the level of force required to

meet the "physical force" requirement of § 924(e)(2)(B)(i).  "[T]he phrase

'physical force' means *violent* force – that is, force capable of causing physical

pain or injury to another person."  *Johnson* (2010), 599 U.S. at 141 (emphasis in

original; citation omitted).  "It plainly refers to force exerted by and through

concrete bodies – distinguishing physical force from, for example, intellectual

force or emotional force."  *Id.* at 138.

The Supreme Court recently revisited the meaning of "physical force" in

*Stokeling v. United States*, 139 S.Ct. 554 (2019).  In the context of a prior

---

[16] *See supra*, footnote 2.

conviction for robbery, the court held that a crime satisfies the "physical force"
aspect of the elements clause if the force required for a conviction "is sufficient to
overcome a victim's resistance." *Id.* at 554. *Stokeling* did not affect the *Johnson*
(2010) Court's holding that intellectual or emotional force are insufficient to meet
the definition of physical force.

> ### d.    The prior convictions specifically stated by the prosecution in the Indictment are not violent felonies under the ACCA.

The three purported violent felonies specifically enumerated in the
Indictment are kidnapping under Florida state law, burglary of a dwelling under
Florida state law and attempted robbery under Florida state law.  For the following
reasons, none of these prior convictions qualifies as a violent felony.

> ### i)    Kidnapping under Florida state law is not a violent felony.

Kidnapping is not an enumerated crime under § 924(e)(2)(B)(ii).  Therefore,
we must analyze the crime under "physical force" requirement of §
924(e)(2)(B)(i), as interpreted by the Supreme Court in *Johnson* (2010) and
*Stokeling*.

The first step in our analysis is setting forth the language of the statute of
conviction – kidnapping under Florida Statute § 787.01.  The relevant portion of
this statute states:

(1)(a) The term "kidnapping" means forcibly, _secretly_, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:

* * * * *

2. Commit or facilitate commission of any felony.

Fla. Stat. § 787.01(1)(a) 2 (emphasis added).

Determining whether the Florida kidnapping statute is a "violent felony" because the crime involves "physical force" requires us to look at "the least of the[] acts" enumerated in the statute. _Johnson_ (2010), 559 U.S. at 137 (citation omitted). Committing kidnapping by "secret" means is the "least act" that will satisfy the statutory elements of § 787.01(1)(a)2.

Regarding kidnapping by secret means, the Ninth Circuit held,

> because under Fla. Stat. § 787.02(1)(a) false imprisonment can be effectuated "secretly," a conviction under Florida's false imprisonment statute need not involve the use of force. _See Robinson v. State,_ 462 So.2d 471, 476 (Fla. Dist. Ct. App. 1984) (rejecting an argument that there was insufficient evidence to support a kidnapping charge against the defendant because there was no evidence of the use of any physical force or threat in transporting the victim); _see also Corner v. State,_ 868 So.2d 553, 556 (Fla. Dist. Ct. App. 2004) (same) _cf. United States v. Hernandez–Hernandez,_ 431 F.3d 1212, 1217 (9th Cir. 2005) (holding that California's false imprisonment statute, which is similar to Florida's, did not categorically constitute a crime of violence).

_United States v. Gonzalez-Perez_, 472 F.3d 1158, 1160–61 (9th Cir. 2007); _see also Jasmin v. United States_, No. 3:16cv761-J-32JBT, 2016 WL 6071663 at *5 (M.D. Fla. Oct. 17, 2017) (holding that Florida kidnapping by secret means "does not require the use of force."). Because kidnapping under Florida law requires no

41

force at all, Mr. Barnes' prior conviction for kidnapping under Florida law is not a violent felony under the ACCA.

### ii) Burglary under Florida law is not a violent felony.

Mr. Barnes' burglary of a dwelling conviction is under Florida Statute § 810.02.  In relevant part, this statute states, "'burglary' means entering or remaining in a dwelling, a *structure*, or a *conveyance* with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."  Fla. Stat. § 810.02(1)(a) (emphasis added).

Florida's definition of burglary has no element that requires the use of "physical force" to commit the crime.  Therefore, burglary cannot be considered a "violent felony" under § 924(e)(2)(B)(i).  This leaves us to consider § 924(e)(2)(B)(ii), the enumerated offense clause.

One of the enumerated crimes in § 924(e)(2)(B)(ii) is burglary.  However, that does not end our analysis.  We must compare the generic or common law definition of burglary with Florida's statutory definition of burglary.  *See United States v. Vigil*, 774 F.3d 331, 333-34 (5th Cir. 2014) (citing *Taylor v. United States*, 495 U.S. 575 (1990).  If Florida's definition is broader that the generic definition, then Mr. Barnes' burglary conviction cannot be a "violent felony" under

the ACCA.  *See id.*  The Eleventh Circuit – the circuit that Florida is located in –
addressed this exact issue.

In *United States v. Wheeler*, 434 Fed. App'x 831, 832 (11th Cir. 2011), the
court addressed whether "third degree burglary under Florida law is different from
generic burglary … thereby not qualifying as a 'violent felony' for purposes of
sentencing under the ACCA."  The third degree burglary statute under which
Wheeler was convicted is the exact same statute that Mr. Barnes was convicted
under – Florida Statute § 810.02.  *See id.*

*Wheeler* holds that generic burglary "includes, at a minimum, the elements
of 'an unlawful or unprivileged entry into, or remaining in, a building or structure,
with intent to commit a crime.'"  *Wheeler*, 434 Fed. App'x at 832 (citing *Taylor v.
United States*, 495 U.S. 575, 599 (1990)).  The court went on to hold:

> On its face, Florida's third degree burglary statute is non-generic in at least
> two regards. First, in addition to covering buildings and structures, it also
> includes "conveyance" which is defined as a "motor vehicle, ship, vessel,
> railroad vehicle or car, trailer, aircraft, or sleeping car." *See* Fla. Stat. §
> 810.011(3). Second, Florida defines "structure," as it is used in the burglary
> statute, to include the curtilage of the structure, which the Florida Supreme
> Court has construed narrowly to include some form of an enclosure around
> the structure. *See State v. Hamilton*, 660 So.2d 1038, 1044 (Fla.1995); *see
> also  James v. United States*, 550 U.S. 192, 212–13, 127 S.Ct. 1586, 167
> L.Ed.2d 532 (2007) (citing to *Hamilton*'s definition of curtilage and noting
> that Florida's definition of curtilage takes the offense of burglary outside of
> *Taylor's* definition of generic burglary).

*Id.* at 833.

43

The well-reasoned analysis in *Wheeler* indicates that Florida's statutory definition of burglary is broader than the generic common law definition.[17]  The holdings in *Wheeler* are consistent with *United States v. Kirk*, in which "Kirk and the government agreed that Florida's definition of burglary is broader tha[n] the definition of generic burglary and that the enumerated offenses clause does not apply to Kirk's case[.]"  767 F.3d 1136, 1139 n.1 (11th Cir. 2014).  Therefore, a conviction under § 810.02 is not an enumerated violent felony conviction under the ACCA.

> ### iii)    Attempted robbery under Florida law is not a violent felony.

Attempted robbery is not an enumerated crime under § 924(e)(2)(B)(ii). Since *Johnson* (2015) rendered the residual clause unconstitutional, the only possible option that this conviction can be deemed a "violent felony" is § 924(e)(2)(B)(i).

A prior conviction is considered a "violent felony" under § 924(e)(2)(B)(i) if it has "as an element the use, attempted use, or threatened use of *physical force* against the person of another[.]"  (Emphasis added).  As set forth above, in

---

[17] The *Wheeler* court went on to find that the subject burglary conviction qualified as a "violent felony" under the residual clause of the ACCA.  *Wheeler*, 434 Fed. App'x at 833-34.  However, *Johnson* (2015), which was decided after *Wheeler*, rendered the residual clause unconstitutional.

*Johnson* (2010) the Supreme Court held that "the phrase 'physical force' means *violent* force – that is, force capable of causing physical pain or injury to another person." *Id.* at 141 (emphasis in original; citation omitted). In *Stokeling*, the Supreme Court softened the standard a bit. The court held that a crime satisfies the ACCA's "physical force" requirement if the force required for a conviction "is sufficient to overcome a victim's resistance." *Stokeling*, 139 S.Ct. at 554. The *Stokeling* Court did not disturb the *Johnson* (2010) Court's ruling that "intellectual force or emotional force" are not sufficient to meet the physical force requirement. *Johnson* (2010), 599 U.S. at 138.

Under these "physical force" definitions, we must consider whether Mr. Barnes' attempted robbery conviction is a "violent felony" under § 924(e)(2)(B)(i). The first step is to look at the language of the charging statute, Florida Statute § 812.13, titled "Robbery." The relevant part of this statute states:

> "Robbery" means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or *putting in fear*.

Fla. Stat. § 812.13(1) (emphasis added).

To determine whether the Florida robbery statute is a "violent felony" on the basis that the prohibited conduct involves "physical force," we look to "the least of the[] acts" enumerated in the statute. *Johnson* (2010) 559 U.S. at 137 (citation

omitted). Committing robbery by "putting in fear" is the "least act" that will

satisfy the statutory elements of § 812.13(1). Putting a person is fear is

comparable to inflicting "intellectual force or emotional force" to commit the

crime, and *Johnson* (2010) clearly holds that this does not meet the definition of

"physical force" under § 924(e)(2)(B)(i). *Johnson* (2010), 559 U.S. at 138. For

this reason alone, Florida's robbery statute does not define a "violent felony" under

the ACCA.

There are other reasons that robbery is not a violent felony. As the court

recognized in *United States v. Geozos*, 870 F.3d 890, 900 (9th Cir. 2017), a person

can be convicted of armed robbery in Florida by merely *carrying* a firearm during

the robbery. The court held that "[t]he mere presence of a firearm or other deadly

weapon that is never revealed to a robbery victim does not constitute 'use,

attempted use, or threatened use of physical force' against the victim." *Id.* (citation

omitted). For this additional reason, robbery under Florida law is not a violent

felony.

But that does not end the analysis. The *Geozos* court also analyzed the *level*

of force required to commit robbery, regardless of whether a weapon is carried or

not. The court held:

> The Florida caselaw makes it clear that one can violate section 812.13
> without using violent force. "[I]n order for the snatching of property from
> another to amount to robbery, the perpetrator must employ more than the
> force necessary to remove the property from the person. Rather, there must

46

be resistance by the victim that is overcome by the physical force of the offender." *Robinson v. State*, 692 So.2d 883, 886 (Fla. 1997). Crucially, the amount of resistance can be minimal. *See Mims v. State*, 342 So.2d 116, 117 (Fla. Dist. Ct. App. 1977) (per curiam) ("Although purse snatching is not robbery if no more force or violence is used than necessary to physically remove the property from a person who does not resist, if the victim does resist in any degree and this resistance is overcome by the physical force of the perpetrator, the crime of robbery is complete." (emphasis added)). Under Florida law, then, a person who engages in a non-violent tug-of-war with a victim over the victim's purse has committed robbery. *See Benitez-Saldana v. State*, 67 So.3d 320, 323 (Fla. Dist. Ct. App. 2011) ("[A] conviction for robbery may be based on a defendant's act of engaging in a tug-of-war over the victim's purse."). According to our precedent, such an act does not involve the use of violent force within the meaning of ACCA. *See Strickland*, 860 F.3d at 1227 (citing an Oregon case in which "the victim and the thief had a tug-of-war over [a] purse" as an example of a case involving something less than violent force within the meaning of *Johnson I*).

*United States v. Geozos*, 870 F.3d 890, 900 (9th Cir. 2017) (internal footnote omitted).

Since "the Florida robbery statute proscribes the taking of property even when the force used to take that property is minimal," the *Geozos* court held that it does not constitute a violent felony under the ACCA.[18]  *Id.* at 901.  Under the same reasoning, this Court should find that Mr. Barnes' attempted robbery conviction does not represent a violent felony conviction.

---

[18] The *Geozos* court recognized that its holding conflict with the Eleventh Circuit's holdings in this issue.  *Geozos*, 870 F.3d at 901 (citing *United States v. Lockley*, 632 F.3d 1238 (11th Cir. 2011); *United States v. Fritts*, 841 F.3d (11th Cir. 2016)).

Finally, holding that Florida's robbery statute fails to meet the ACCA's physical force clause will be consistent with precedent from the following circuit courts of appeal:

- the First Circuit in *United States v. Starks*, 861 F.3d 306 (1st Cir. 2017), holding that Massachusetts' unarmed robbery statute fails to meet the physical force clause;

- the Fourth Circuit in *United States v. Winston*, 850 F.3d 677, 683-86 (4th Cir. 2017), holding that Virginia common law robbery fails to meet the physical force clause because a conviction can be returned for robbery by "intimidation" and because the statute can be violated with minimal use of physical force;

- the Eighth Circuit in *United States v. Eason*, 829 F.3d 633, 640-42 (8th Cir. 2016), holding that Arkansas' robbery statute fails to meet the physical force clause because the statute can be violated "with no threat of force and no actual injury" to the victim; and

- the Ninth Circuit in *United States v. Parnell*, 818 F.3d 974, 978-82 (9th Cir. 2016), holding that Massachusetts' armed robbery statute fails to meet the physical force clause.

### e.     The two additional prior convictions that are _not_ specifically enumerated in the Indictment are not violent felonies under the ACCA.

### i)     Introduction.

As argued above, under the holdings in *United States v. Batchelder*, 442 U.S. 114 (1979), the Court is limited to considering _only_ the specifically enumerated prior felony offenses stated in the Indictment.  If the Court disagrees with Mr. Barnes' argument on this issue, then based on the following analyses, the two additional prior convictions are not violent felony convictions under the ACCA.

### ii)     Armed robbery under Florida law is not a violent felony.

Whether armed robbery under Florida law is a violent felony under the ACCA requires the _exact same analysis_ as determining whether attempted robbery under Florida state law is a violent felony.  Both involve analysis of Florida Statute § 812.13.  Section 812.13 is analyzed above under the subsection of this Brief titled "Attempted robbery under Florida law is not a violent felony."  For all of the reasons stated in under that subsection of this Brief, armed robbery under Florida law is not a violent felony under the ACCA.

### iii)    Aggravated battery under Florida law is not a violent felony.

Aggravated battery is not an enumerated crime under § 924(e)(2)(B)(ii).  So the only possible option under which the prior attempted robbery conviction can be deemed a "violent felony" is the physical force clause stated in § 924(e)(2)(B)(i).

The initial step in our analysis to look at the language of the charging statute, Florida Statute § 784.045, titled "Aggravated battery."  The relevant part of this statute states:

> (1)(a) A person commits aggravated battery who, in committing battery:
> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; _or_
> 2. _Uses a deadly weapon_.

Fla Stat. § 784.045(1)(a) (emphasis added).

As with the other statutes analyzed above, determining whether the Florida aggravated battery statute defines "violent felony" requires us to look to "the least of the[] acts" enumerated in the statute.  _Johnson_ (2010) 559 U.S. at 137 (citation omitted).  In the context of this ACCA analysis, assaulting someone by using a "deadly weapon" is the "least act" that will satisfy the statutory elements of § 784.045.

This Court's decision in _United States v. Villegas-Hernandez_, 468 F.3d 874 (5th Cir. 2006), _overruled by United States v. Reyes-Contreras_, 910 F.3d 169, 187 (5th Cir. 2018) (_en banc_), provides guidance on whether the committing assault by

50

use of a deadly weapon meets the definition of physical force.[19]  The defendant in

that case was convicted of illegally reentering the United States after deportation

following a state court assault conviction.  *Villegas-Hernandez*, 468 F.3d at 876-

77.  At issue was whether defendant's assault conviction was an "aggravated

felony" under § 2L1.2(b)(1)(C).[20]  *Id.* at 877.  The district court found that it was,

and defendant appealed.  *Id.* at 877-78.

Both parties agreed that the applicable subsection of the Texas Misdemeanor

assault statute – Texas Penal Code § 22.01 – makes a person guilty of the offense if

it is proven that he "intentionally, knowingly, or recklessly causes bodily injury to

another[.]"  *Villegas-Hernandez*, 468 F.3d at 878.  "The government contend[ed]

that 22.01(a)(1)'s requirement that a defendant cause bodily injury incorporates a

requirement to show the intentional use of force, such that Villegas-Hernandez's

prior assault conviction satisfies 16(a)'s definition of crime of violence."  *Id.* at

878-79.  This Court disagreed.  *Id.* at 879.

---

[19] In candor to the Court, the defense acknowledges that *Villegas-Hernandez* was overruled by *Reyes-Contreras*, which was decided on November 30, 2018.  Thus the argument asserted by the defense is against Fifth Circuit precedent.  The defense preserves this issue for further appellate review by the United States Supreme Court because the holdings in *Reyes-Contreras* are arguably at odds with the Supreme Court's holdings in *Johnson* (2010) and *Stokeling*.

[20] For purposes relevant to the appeal, § 2L1.2's definition of "aggravated felony" is found in 18 U.S.C. § 16(a)'s definition of "crime of violence."  *See Villegas-Hernandez*, 468 F.3d at 877. Section 16(a) states:

> The term "crime of violence" means--
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]

This language is functionally identical to the language of 18 U.S.C. § 924(e)(2)(B)(i) that is at issue in the subject case.

The Court held "an assault offense under section 22.01(a)(1) satisfies subsection 16(a)'s definition of a crime of violence only if a conviction for that offense could not be sustained without proof of the use of "destructive or violent" force. *Villegas-Hernandez*, 468 F.3d at 879. Then, the Court went on to provide examples of how a violation of the assault statute could be committed without using *any* physical force:

> The bodily injury required by section 22.01(a)(1) is "physical pain, illness, or any impairment of physical condition." Tex. Pen. Code Ann. § 1.07(a)(8). Such injury could result from any of a number of acts, without use of "destructive or violent force", making available to the victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim. To convict a defendant under any of these scenarios, the government would not need to show the defendant used physical force against the person or property of another. Thus, use of force is not an element of assault under section 22.01(a)(1), and the assault offense does not fit subsection 16(a)'s definition for crime of violence.

*Villegas-Hernandez,* 468 F.3d at 879.

Just like the example stated in *Villegas-Hernandez*, the "deadly weapon" used to assault a victim under the subject Florida aggravated assault statute could be poison. Assaulting a person using poison requires no physical force at all. Therefore, Mr. Barnes' prior aggravated assault conviction does not count as a violent felony under the ACCA.[21]

---

[21] The Eleventh Circuit has held that aggravated battery under Florida law is a violent felony under the ACCA. *United States v. Tarver*, 712 F. App'x 885 (11th Cir. 2017). However, this

### iv)    Conclusion regarding the two additional prior convictions that are *not* specifically enumerated in the Indictment.

As analyzed above, if two or more violent felony crimes are committed on the same occasion, then only one of them can count as a prior violent felony conviction under the ACCA. *See* 18 U.S.C. § 924(e)(1). Both of the crimes resulting in the prior convictions analyzed in this subsection of the Brief – armed robbery and aggravated battery – occurred at the same time as the kidnapping crime that Mr. Barnes was convicted of. *See* PSR, ROA.290-91, ¶ 31. Under the arguments presented above, none of these three convictions qualifies as a violent felony conviction under the ACCA. But if the Court disagrees with Mr. Barnes' arguments on any of these three prior convictions, then under § 924(e)(1) only one of the priors qualifies as a prior violent felony conviction under the ACCA.

---

Court's precedent in *Villegas-Hernandez* is at odds with the conclusion reached in *Tarver*. Therefore, the Court should hold that the subject aggravated battery conviction is not a violent felony conviction under the ACCA.

# VI.  CONCLUSION

Based on the arguments presented above, this Court should rule that the waiver of post-conviction relief provision in Mr. Barnes' Plea Agreement is unenforceable because a defendant cannot waive a right that is unknown at the time the waiver is executed.  If the Court so rules, then the case should be remanded to district court for resentencing because under *Johnson* (2015) Mr. Barnes no longer has enough qualifying prior convictions to be an "armed career criminal" under the ACCA.

/s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender
Office of the Federal Public Defender
Southern District of Mississippi
200 S. Lamar Street, Suite 200-N
Jackson, MS  39201
Telephone:  601-948-4284
Facsimile:  601-948-5510

Attorney for Defendant-Appellant

# **CERTIFICATE OF SERVICE**

I, Michael L. Scott, certify that today, April 10, 2019, a copy of the Brief for Appellant and Appellant's Record Excerpts were filed via this Court's electronic case filing system, which in turn forwarded electronic copies of both documents to all counsel of record in this case.  Also, a copy of the Brief for Appellant only was delivered via United States Mail, postage prepaid to appellant Michael James Barnes.

/s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P.

   32(a)(7)(B) because, excluding the parts of the document exempted by Fed.

   R. App. P. 32(a)(7)(B)(iii), this document contains 12,844 words.

2. This document complies with the typeface requirements of Fed. R. App. P.

   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

   this document has been prepared in proportionately spaced typeface using

   Microsoft Word in 14 point font size and Times New Roman type style.

/s/ *Michael L. Scott*
**Michael L. Scott**
Assistant Federal Public Defender
